UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

F.T. MARITIME SERVICES LTD.,

          Petitioner,

                  v.

LAMBDA SHIPHOLDING LTD.,

          Respondent.

**OPINION AND ORDER**

20 Civ. 2111 (ER)

Ramos, D.J.:

      This matter arises from a dispute on the high seas. F.T. Maritime Services Ltd. ("F.T. Maritime") petitions the Court to compel arbitration against Lambda Shipholding Ltd. ("Lambda") for nonpayment on the purchase of marine fuel. Pending before the Court is F.T. Maritime's motion to compel arbitration and for appointment of an arbitrator to resolve the dispute. For the reasons set forth below, the motion is denied.

**I.    Factual Background**

      **A.    The Instant Petition**

      F.T. Maritime is a Cypriot corporation that supplies marine fuel, called bunkers, to seafaring vessels. Doc. 1 at ¶ 2. Lambda is a Liberian company that owns a ship named M/V PLUTO, I.M.O. No. 9432531 (the "Vessel"). *Id.* at ¶ 3; Doc. 11 at ¶ 3. On August 17, 2018, Nordia Bulk A/S Ltd. ("Nordia") entered an agreement with Lambda to charter the Vessel. Doc. 1 at ¶ 4. The Agreement obligated Nordia to purchase and load bunker onto the Vessel. *Id.*

      On November 5, 2018, Nordia ordered 150 metric tons of intermediate fuel oil at $539 per metric ton and 150 metric tons of marine gas oil at $897 per metric ton from

F.T. Maritime. *Id.* at ¶ 5. On November 6, 2018, F.T. Maritime confirmed Nordia's order (the "Confirmation"). *Id.* at ¶ 6. The Confirmation detailed the price of the bunker, required payment within thirty days of delivery, and explained that delivery was subject to F.T. Maritime's Standard Terms and Conditions. *Id.*

F.T. Maritime has at least three versions of Standard Terms and Conditions. All three versions are dated August 2016 and are stamped as version 1.4. The parties do not dispute that each version of the Standard Terms and Conditions states that F.T. Maritime could seek a maritime lien for the price of the bunker supplied in any court of competent jurisdiction. *Id.* at ¶ 7. The parties do dispute, however, the provisions governing arbitration and choice of law.

In the petition, F.T. Maritime alleges that the Standard Terms and Conditions incorporated into the Confirmation provide that the transaction is governed by United States law and any dispute "shall be referred to Arbitration in New York" ("NY STC").[1] *Id.* However, the Standard Terms and Conditions affixed to the petition assert that English law governs, and that arbitration would proceed in London pursuant to the London Maritime Arbitrators Association's rules ("London STC"). Doc. 1-3 at § 21.00. In addition, the version of the Standard Terms and Conditions hyperlinked in the

---

[1] F.T. Maritime submits a copy of NY STC as Exhibit 1 to the Declaration of Triantafullos Tzanetis in support of its reply. Doc. 33-1. Tzanetis, F.T. Maritimes' Sales Director, avers that he personally confirmed Nordia's order and sent the NY STC to Nordia upon request via email. Doc. 33 at ¶¶ 1, 5-7. Tzanetis further asserts that

> there is no question as to the operative [Standard Terms and Conditions] because the only [Standard Terms and Conditions] used by [F.T. Maritime] in 2018 is the version I have attached as Exhibit 1. This is the same version I sent to [Nordia] at the time of this transaction (Exhibit 3), and the same version that was available on [F.T. Maritime's] website in November 2018 (Exhibit 2).

*Id.* at ¶ 10. However, neither the copy of the Confirmation at Exhibit 2, nor the copy of the email correspondence between F.T. Maritime and Nordia at Exhibit 3 confirms Tzanetis' averments that the NY STC was the operative version at the time of the sale. Docs. 33-2; 33-3.

Confirmation itself provides that United States law governs and that disputes will be arbitrated in New York, but also details the procedure by which the arbitration panel will be selected ("Link STC").[2]  Doc. 1-2 at 2.

On November 7, 2018, in fulfillment of Nordia's order, F.T. Maritime delivered bunker to the Vessel at the port of Kingston, Jamaica.  Doc. 1 at ¶ 8.  On November 16, 2018, F.T. Maritime issued an invoice to Nordia, the Vessel, and the Vessel's master and owners for $215,440.56.  *Id.* at ¶ 9.

When Nordia failed to pay for the bunker, F.T. Maritime brought an action to enforce its maritime lien in the Supreme Court of Judicature of Jamaica ("Jamaican Action").  *Id.* at ¶ 10.  On December 19, 2018, the Registrar of the Jamaican court issued an order directing that a warrant of arrest be served on the Vessel.  *Id.*  The following day, the Vessel was arrested at Port Kaiser, Jamaica.  Docs. 26 at ¶¶ 3-6; 26-3.

On December 28, 2018, Lambda's insurers, Skuld North America Inc. ("Skuld"), issued a $224,000 undertaking to F.T. Maritime (the "Skuld Undertaking").[3]  Doc. 1 at ¶ 11.  Under the terms of the Skuld Undertaking, Skuld promised to pay F.T. Maritime up to $224,000 after a final enforceable and unappealable arbitration award or judgment is issued in F.T. Maritime's favor by a court or tribunal of competent jurisdiction.[4]  Doc. 1 at ¶ 11.  Consequently, that same day, the Vessel was released.  *Id.* at ¶ 12.

On May 6, 2019, F.T. Maritime served a demand for arbitration on counsel for Lambda and Skuld demanding arbitration in New York (the "Demand").  *Id.* at ¶ 13; Doc.

---

[2]  The procedure, that each party select an arbitrator who will then together select the third arbitrator, is the procedure F.T. Maritime followed in this case and is not contained in the NY STC.  Doc. 1 at ¶¶ 15-16.

[3] That same day, F.T. Maritime sent Lambda a copy of the NY STC.  Doc. 32-1 at ¶ 12 & LH-4.

[4]  The Skuld Undertaking also provides for application of English law and jurisdiction in the High Court of Justice in London should a dispute arise under its terms.  Doc. 1-6.

3

1-8 at 1-2.  On May 16, 2019, Lambda acknowledged the Demand.  Doc. 1 at ¶ 14.  On May 23, 2019, F.T. Maritime notified Lamda that it was appointing Mr. Thomas Fox to their arbitration panel.  *Id.* at ¶ 15.  Lambda has since refused to arbitrate.  *Id.* at ¶ 16.

### B. The Jamaican Action

On February 1, 2019, Lambda filed a defence and counterclaim in the Jamaican Action alleging that it has no contract with F.T. Maritime and seeking, *inter alia*, damages for wrongful arrest of the Vessel.  Doc. 26 at ¶¶ 13-14.  On November 5, 2019, Lambda moved to strike F.T. Maritime's claim and for summary judgment on its counterclaim, arguing in part that the parties have no contract.  *Id.* at ¶¶ 15-17.

On March 18, 2020, F.T. Maritime applied for a stay of the Jamaican Action pending arbitration in the United States.  *Id.* at ¶ 19; Doc. 26-11 at 3(i).  In its stay application, F.T. Maritime alleged that Lambda "entered into an agreement with [F.T. Maritime] for the supply of marine bunker fuel subject to Terms and Conditions, which indicate that the agreement shall be referred to Arbitration pursuant to the LMAA Rules currently in force[,]" apparently referring to the London STC.  Doc. 26-11 at ¶ 3(a).  On March 24, 2020, F. T. Maritime submitted its opposition to Lambda's motions.  Doc. 26-15.  Again, F.T. Maritime alleged that its agreement with Lambda provided for "Arbitration in London pursuant to the LMAA Rules currently in force[,]" quoting the London STC.  *Id.* at ¶ 74.

On March 26, 2020, a hearing was held in the Jamaican Action on the parties' applications during which each party had thirty minutes to present their case.  Docs. 26 at ¶ 30; 38-1 at ¶ 2.  On April 23, 2020, the Jamaican court issued a decision striking F.T. Maritime's claim and denying the stay because, applying English law, there is no

maritime lien and therefore no action in rem against the vessel, and "no contractual claim to be pursued in personam against" Lambda ("April 23 Order"). Docs. 38 at ¶ 15; 38-1 at ¶¶ 14-16. The Jamaican court further ordered the parties to proceed on Lambda's counterclaim. *Id.* at 20(b).

### C. Procedural History

On March 10, 2020, F.T. Maritime filed the instant petition to compel arbitration and appoint an arbitrator. Doc. 1. On April 15, 2020, Lambda answered the petition, and, on April 16, 2020, Lambda opposed. Doc. 25.

## II. Legal Standards

### A. Motion to Compel Arbitration

Under the Federal Arbitration Act ("FAA"), "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA reflects "a liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), and places arbitration agreements on "the same footing as other contracts." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012) (quoting *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511 (1974)). Thus, parties are not required to arbitrate unless they have agreed to do so. *Id.* Before an agreement to arbitrate can be enforced, the district court must first determine whether such agreement exists between the parties. *Schnabel*, 697 F.3d at 118. This question is determined by state contract law principles. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (citing *Specht v. Netscape Commc'ns Corp.*, 206 F.3d 17, 27 (2d Cir. 2002)).

5

In the context of motions to compel arbitration, allegations related to the question of whether the parties formed a valid arbitration agreement are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial, which is a similar standard to that applicable for a motion for summary judgment. *Schnabel*, 697 F.3d at 113; *see also Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003) ("In the context of motions to compel arbitration brought under the [FAA] . . . the court applies a standard similar to that applicable for a motion for summary judgment.  If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary.") (citations omitted).  On a motion for summary judgment, the court considers "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, and draws all reasonable inferences in favor of the non-moving party." *Meyer v. Uber Techs., Inc*., 868 F.3d 66, 74 (2d Cir. 2017) (citations omitted).

If the Court determines that a valid agreement to arbitrate exists, the Court must then determine whether the particular dispute falls within the scope of arbitration agreement. *Specht,* 306 F.3d at 26 (citation omitted).  If the dispute falls within the scope of the arbitration clause, the "role of the court ends and the matter is one for arbitration." *Unique Woodworking, Inc. v. New York City Dist. Council of Carpenters' Pension Fund*, No. 07 Civ. 1951 (WCC), 2007 WL 4267632, at *10 (S.D.N.Y. Nov. 30, 2007).

### B. Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure allows a party to amend its complaint pursuant to the other party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  Under Section 15(a)(2), a "court should freely give leave [to amend] when

justice so requires." Fed. R. Civ. P. 15(a)(2).  Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis*, 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (citation omitted).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (citation omitted). Amendment is futile when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (citation omitted). Following this standard, courts accept the plaintiff's factual allegations as true and draw reasonable inferences in favor of the plaintiff. *Dougherty*, 282 F3d at 87.

### III. Discussion

F.T. Maritime contends that the parties are bound by its NY STC to arbitrate, and that the London STC was mistakenly affixed to its petition. Lambda argues that F.T. Maritime's petition is collaterally estopped by the April 23 Order and, if it is not, it is not clear which of F.T. Maritime's Standard Terms and Conditions apply in this case and therefore no agreement to arbitrate exists. The Court will address each argument in turn.

#### A. Collateral Estoppel

Collateral estoppel, also known as issue preclusion, "applies to judgments issued by courts of foreign countries." *Yukos Cap. S.A.R.L. v. OAO Samaraneftegaz*, 963 F. Supp. 2d 289, 295 (S.D.N.Y. 2013). Before determining whether a foreign judgment is preclusive, however, a court must recognize the foreign judgment. *China Shipping*

*Container Lines Co. Ltd. v. Big Port Serv. DMCC*, No. 15 Civ. 2006 (AT), 2019 WL 9362547, at *5 (S.D.N.Y. Jan. 15, 2019), *aff'd,* 803 F. App'x 481 (2d Cir. 2020) (summary order).  Courts may recognize a foreign judgment based on principles of comity. *Yukos*, 963 F. Supp 2d at 295 (citation omitted).  "Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987) (citing *Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895)).

*China Shipping* is particularly instructive here.  In that case, respondent supplied bunker to petitioner's vessel through subcontractors who went bankrupt and then commenced an action in Singapore against petitioner for payment.  2019 WL 9362547, at *1.  Respondent then served an arbitration demand on petitioner to conduct arbitration in New York and requested a stay of the Singaporean action. *Id.*  The Singaporean court dismissed the action, and denied the stay, concluding that there was no contract between the parties. *Id.* at *2.  The *China Shipping* court reasoned that recognition of the Singaporean decision was appropriate because respondent had brought the action in Singapore, had not challenged the jurisdiction of the Singaporean court, and respondent was not a United States company. *Id.* at *5.  The *China Shipping* court further explained that, although there is a strong public policy favoring arbitration, that policy applies to the scope of the arbitration agreement and not the threshold issue of whether an agreement to arbitrate exists. *Id.*

*China Shipping* is on all fours with this case.  F.T. Maritime initiated the Jamaican Action in Jamaica and has not challenged Jamaica's jurisdiction.  In addition,

8

because neither party is an American company, recognition of the April 23 Order does not prejudice the rights of any United States citizens. Finally, domestic policy is not violated by recognizing the April 23 Order because the parties disagree on whether an agreement to arbitrate exists, not the scope of the issues to be determined by arbitration. *China Shipping*, 2019 WL 9362547, at *5. The Court therefore recognizes the April 23 Order.

Having recognized the April 23 Order, the Court now must consider whether it has preclusive effect. "Collateral estoppel bars relitigation of an issue that has already been fully and fairly litigated in a prior proceeding." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 400 (2d Cir. 2011) (citation omitted). Such an issue is precluded when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* (citation omitted).

Of these elements, F.T. Maritime only disputes that the issue raised by its petition—whether there is an agreement to arbitrate—is identical to the issue resolved by the April 23 Order. In particular, F.T. Maritime explains that the Jamaican Action was only concerned with arrest of the Vessel, and that the issue decided in the April 23 Order was whether there is a maritime lien under English law, not whether there was an agreement to arbitrate at all.

F.T. Maritime's argument ignores the procedural history of the Jamaican Action and the express holdings of the April 23 Order. Lambda argued that F.T. Maritime's claim should be stricken because there is no contractual relationship between the parties.

9

The Jamaican court then expressly held in the April 23 Order that "there is no contractual claim to be pursued in personam against the ship's owners[.]" Doc. 38-1 at ¶ 16. Although the April 23 Order did not expressly decide whether the parties were bound to arbitrate, it decided the broader, inclusive question of whether the parties are bound by an agreement at all and found that they are not.  That finding is conclusive.

Moreover, F.T. Maritime's position was expressly rejected in *China Shipping*, 2019 WL 9362547, at *6 ("the issue of whether an arbitration agreement exists between the parties was raised by BPS in the Singapore Action, and the Court rejects BPS's argument that the Singapore proceedings were limited to the issue of the Vessel's arrest [because t]he extensive records from the Singapore Action submitted in this case belie this argument").

F.T. Maritime's further argument that the April 23 Order is provisional and therefore not the proper subject of issue preclusion was rejected by the Second Circuit on appeal in *China Shipping*, 803 F. App'x at 483-84.

The undisputed factors further support application of collateral estoppel in this case.  The Jamaican Action involved extensive briefing raising the issue of the existence of a contract.  The Jamaican court held a hearing on the entire briefing at which both parties were given thirty minutes of argument time.  Finally, the April 23 Order rightfully reached the contract claim as "[t]he entire action, in fact, centered around [the] allegation that such an agreement existed." *China Shipping*, 2019 WL 9362547, at *7.

Accordingly, F.T. Maritime is collaterally estopped from bringing this petition.

### B.     F.T. Maritime's Substantive Claim

Even if F.T. Maritime's claim were not collaterally estopped, it would fail on the merits.  While F.T. Maritime insists that the NY STC is incorporated into the Confirmation, it has not provided evidence that is so.  Although F.T. Maritime provides a quotation from the NY STC in the petition, it attached the London STC.  F.T. Maritime argues that the attachment is an error and requests leave to amend, but amendment would be futile because the weakness in F.T. Maritime's claim is not that it attached the London STC to its petition.  Amendment would not change the substantial evidence contradicting that the NY STC applies to this case at all.

F.T. Maritime sent the NY STC to Lambda in December 2018, and demanded arbitration in New York in its May 2019 Demand.  But F.T. Maritime provides no definitive proof that it sent the NY STC to Nordia or Lambda at the time of the sale in November 2018, and repeatedly quoted the London STC as operative in the Jamaican Action.  Moreover, the Confirmation only generically references F.T. Maritime's Standard Terms and Conditions, and the hyperlink provided in the Confirmation links to a third version entirely, the Link STC.

Courts in this Circuit have long held that for a document to be incorporated into a written instrument by reference, it must be referenced, described, and identified "beyond all reasonable doubt."  *GE Transp. Parts LLC v. Cent. Ry. Mfg., LLC*, 468 F. Supp. 3d 607, 615 (S.D.N.Y. 2020) (citing *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996).  "[V]ague references to documents not specifically identified do not suffice." *GE Transp. Parts*, 468 F. Supp. 3d at 615 (citation omitted).  In *GE Transp. Parts*, the court found that reference to the plaintiff's "specifications" were insufficient to warrant

11

incorporation into the agreement at issue because it "only makes reference to a general class of extrinsic documents rather than to a specific document." *Id.* (citation omitted).

The same is true in this case. The Confirmation merely references F.T. Maritime's Standard Terms and Conditions, but does not specify to which of at least three different versions it refers. Because it is not clear which version of F.T. Maritime's Standard Terms and Conditions applies, none of them are incorporated beyond a reasonable doubt. Because none of F.T. Maritime's Standard Terms and Conditions are incorporated, there is no agreement to arbitrate.

F.T. Maritime's substantive claim is therefore denied.

## IV. Conclusion

For the reasons set forth above, the Court denies F.T. Maritime's motion. The Clerk is respectfully directed to close the case.

SO ORDERED.

Dated: April 12, 2021
New York, New York

_____
Edgardo Ramos, U.S.D.J.